IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-01814-MSK-BNB

MICHAEL CASTILLO, on behalf of himself and all similarly situated persons,

Plaintiff,

v.

USA PARKING SYSTEMS, INC., and
CENTRAL PARKING SYSTEM, INC., both Tennessee corporations,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the parties' **Joint Motion for Approval of Settlement Agreement** [Doc. # 34, filed 2/3/2014] (the "Motion"). I held a hearing on the Motion on March 5, 2014, and ordered further briefing. The briefing has been received. I respectfully RECOMMEND that the Motion be GRANTED, and that the Settlement Agreement and General Release [Doc. # 34-1] be entered as a stipulated judgment. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982).[1]

---

[1] At the hearing on the Motion, the parties suggested that I could grant the motion and approve the settlement, and that they would thereafter file a stipulation of dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii). On review, that procedure does not appear viable. Under Rule 41(a)(1)(A)(ii) the authority of the parties to stipulate to the dismissal of an action is "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute. . . ." Settlement of an FLSA action brought under 29 U.S.C. §216(b) requires the entry of "a stipulated judgment" after a district court "scrutiniz[es] the settlement for fairness." Lynn's Food, 679 F.2d at 1353. The parties have not consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), precluding me from entering a stipulated judgment and requiring that I proceed by recommendation.

The plaintiff has asserted claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the Colorado Wage Claim Act, section 8-4-101 et seq. First Amended Complaint [Doc. # 14]. In particular, the plaintiff alleges:

> 6. Under the law, employees who serve customers are entitled to keep the tips they earn. Under some circumstances, however, employees may be required to share a portion of their tips with other employees who work in a "customarily and regularly" tipped occupation. Under no circumstances, however, may an employer take employee tips to pay company expenses or require service employees to share their tips with "back of the house" staff or management.
>
> 7. USA Parking operates valet parking operations at various hotels in Colorado and employs numerous valets who regularly receive tips from customers.
>
> 8. In violation of the law, USA Parking diverts a large portion of its employees' earned tips to pay company expenses and/or employees who are not "customarily and regularly" tipped. As a result, USA Parking has illegally diverted tips.
>
> \* \* \*
>
> 12. Various hotels, restaurants and other businesses in Colorado contract Defendants to operate on-site valet parking services. The fees generated by these valet operations are shared between Defendants and the contracting business according to the terms of a negotiated contract.
>
> 13. To provide the valet services, Defendants hire General Managers to run each operation and, with the help of one or more assistants, oversee the numerous valets who do the work of parking cars and assisting customers. In the course of providing this customer service, the valets who work for Defendants receive tips from customers. These tips are collected daily and distributed according to a formula among the various valets working a particular shift. In addition to the valets, however, the General Manager takes an equal share of the tips. This is illegal under state and federal law because, as agents of Defendants in relation to the valet employees, General Managers are not "customarily and regularly" tipped employees. In other words, the General Managers run the valet operation, supervise and discipline the valets and, therefore, should not have diverted tips from valets.

Id. at ¶¶6-8, 12-13. Although the First Amended Complaint purports to assert collective and class actions, no collective or class has been certified and no plaintiff has purported to opt-in.

Employees may settle FLSA back wage claims in one of two ways. Lynn's Food, 679 F.2d at 1352-53; Grove v. ZW Tech, Inc., 2012 WL 1789100 *3 (D. Kan. May 17, 2012). First, 29 U.S.C. § 216(c) allows an employee to release FLSA claims if the payment of unpaid wages is supervised by the Secretary of the Department of Labor to assure fairness to the employee. See 29 U.S.C. § 216(c); Lynn's Food, 679 F.2d at 1353. Second, in the context of a private lawsuit brought by an employee against an employer under § 216(b), as here, an employee may release FLSA claims if a district court reviews the settlement and determines that it is fair and reasonable. Lynn's Food, 679 F.2d at 1353; Baker v. Vail Resorts Mgmt. Co., 2014 WL 700096 *1 (D. Colo. Feb. 24, 2014). Requiring court approval of an FLSA settlement effectuates the purpose of the statute, which is to "protect certain groups of the population from substandard wages and excessive hours . . . due to the unequal bargaining power as between employer and employee." Brooklyn Sav. Bank v. O'Neill, 324 U.S. 697, 706 (1945). To approve a settlement, the court must find that (1) the litigation involves a bona fide dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains a reasonable award of attorneys' fees. Baker, 2014 WL 700096 at *1.

### A. Bona Fide Dispute

To demonstrate the existence of a bona fide dispute, the parties must provide:

> (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's

> estimate of the number of hours worked and the applicable wage. The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement.

Id. (internal citations omitted).

The quoted allegations of the First Amended Complaint adequately demonstrate the nature of the dispute, describe the employer's business and the nature of the work performed by the claiming employee, and explain the employee's justification for the disputed wages. In addition, the employers have stated the following reasons for disputing the plaintiff's claim:

> [T]hey did not take a tip credit to offset minimum wage obligations to plaintiff; therefore, the FLSA's tip pool rules were inapplicable. . . . [E]ven if the rules applied, they did not violate them and they owed plaintiff nothing under the FLSA. Finally, because, since at least May 2011, defendants' Colorado property managers have not participated in tip pools with valet parking attendants, defendants asserted a statute of limitations defense.

Motion [Doc. # 34] at pp. 2-3. In further support of the tip credit defense, the defendants argue in their Motion to Dismiss First Amended Complaint In Part [Doc. # 16]:

> Importantly, under the plain language of the FLSA and "a consistent body of case law, [the FLSA tip rules] apply only when the employer pays the employee below the minimum was and relies on a tip credit to supplement that wage." Trinidad v. Pret A Manger (USA) Limited, 2013 U.S. Dist. LEXIS 97544, at *38-39 (S.D.N.Y. July 2013); 29 U.S.C. § 203(m); Stephenson v. All Resort Coach, Inc., 2013 U.S. Dist. LEXIS 121766, at *12-16 (D. Utah August 26, 2013)("compliance with the requirements of [§203(m)] are only required when an employer takes a tip credit."); [Cumbie v. Woody Woo Inc., 596 F.3d 577, 581 (9th Cir. 2010)]; see also Chan v. Triple 8 Palace, Inc., 2006 U.S. Dist. LEXIS 15780 at *15 (S.D.N.Y. 2006) ("[T]o the extent plaintiffs rely on federal law, they can prevail only if defendants have relied on the tip credit."). Accordingly to prevail on his FLSA claim plaintiff must first show defendants took a tip credit to offset FLSA minimum wage it owed him, otherwise the FLSA does not apply.
> \* \* \*
> Plaintiff has not alleged facts showing defendants were subject to

> the FLSA's tip credit rules.  He does not claim defendants paid him below minimum wage and took a tip credit to supplement that wage. . . .  Indeed, in response to defendants' first motion to dismiss, plaintiff confirmed that he is not alleging defendants took a tip credit. . . .  Since plaintiff does not allege defendants took a tip credit, he has not established a basis for applying FLSA tip rules.
>
> Despite the plain language of §203(m) and weight of authorities cited above, plaintiff nevertheless contends that §203(m) applies to his tip claim.  He argues that limiting §203(m) to situations where employers take a tip credit would "nullify the Congressional goal of §203(m)," which, according to plaintiff, is "to limit and balance an employer's use of and control over tips."

Id. at pp.3-4.

I find that a bona fide dispute exists.

### B. Fair and Reasonable Settlement

To be fair and reasonable under §216(b), an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales.  Baker, 2014 WL 700096 at *2.  Fairness is evaluated under the factors applicable to class action settlements under Fed. R. Civ. P. 23(e), which include the following: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.  Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002); Baker, 2014 WL 700096 at *2.

The proposed settlement calls for the defendants to pay the plaintiff $10,500.00.  In addition, the defendants will pay plaintiff's counsel $25,000.00.  I find that the settlement was fairly and honestly negotiated by the parties, and the value of an immediate recovery outweighs

the potential for future relief after further litigation.  In fact, the parties assert that the settlement payment to the plaintiff represents more than he could recover at trial.  Motion [Doc. # 34] at ¶4(g).  There can be little doubt that the case involves serious questions of law and fact--I recommended that the plaintiff's claim under the FLSA be dismissed for failure to state a claim, Amended Recommendation [Doc. # 26], but the district judge sustained the plaintiff's objection and refused to accept the recommendation.  Order [Doc. # 31].  Finally, the parties represent that they believe the settlement is fair and reasonable.  Motion [Doc. # 34] at ¶4(g).

The purpose of the FLSA is to protect employees' rights against employers who generally wield superior bargaining power.  Baker, 2014 WL 700096 at *2.  To assure that a proposed settlement does not undermine that purpose, courts consider (1) the presence of other similarly situated employees; (2) a likelihood that plaintiff's circumstances will recur; and (3) whether defendants have a history of non-compliance with the FLSA.  Id.  Here, no similarly situated employees have attempted to join the suit; since at least May 2011, defendants' Colorado managers have not participated in tip pools with valet parking attendants; and there is no indication that the defendants have a history of non-compliance with the FLSA.

I find that the proposed settlement is fair and reasonable.

### C. Reasonable Attorneys Fees

Section 216(b), 29 U.S.C., requires that the settlement of an FLSA claim include an award of "a reasonable attorney's fee . . . and costs of the action."  To determine reasonableness, I apply the lodestar approach which requires that the plaintiff demonstrate that the fee is based on hours reasonably expended multiplied by a reasonable hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The lodestar amount may be adjusted based on, among other things, the

amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved. Baker, 2014 WL 700096 at *3.

The first step in calculating a fee award is to determine the number of hours reasonably spent by counsel for the party seeking the fees. The burden of proof lies with the party seeking fees. Id. at 437 (1983).

The plaintiffs' attorney, Brian Gonzales, has itemized the tasks performed and the time required for those tasks. The itemization reflects a total of 69.6 hours of time expended. I have reviewed the time itemization and find that the time claimed was reasonably and necessarily expended in connection with pursuing the plaintiff's claims.[2]

The plaintiff claims attorney fees at a rate of $345.00 per hour. The plaintiff bears the burden of establishing that the rate is reasonable. Guides, Ltd. v. Yarmouth Group Property Mgmt., Inc., 295 F.3d 1065, 1078 (10th Cir. 2002). "A reasonable rate is the prevailing market rate in the relevant community." Id. A trial court may use its own knowledge in determining a reasonable rate. Id. at 1079. See Praseuth v. Rubbermaid, Inc., 406 F.3d 1245, 1259 (10th Cir. 2005)(approving the district court's determination of the applicable hourly rate by "relying on its knowledge of rates of lawyers with comparable skill and experience" practicing in the relevant market). I find that a rate of $345.00 per hour is reasonable for a lawyer of Mr. Gonzales' training and experience and in connection with a case of this nature.

---

[2]As the Supreme Court instructed in Fox v. Vice, 131 S. Ct. 2205, 2216 (2011), "trial courts need not, and indeed should not become green-eyeshade accountants" when determining a fee application. "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." Id.

Multiplying the number of hours reasonably incurred by the reasonable hourly rate results in the following: 69.6 hours x $345.00 per hour = $24,012.00.

The modest adjustment of the lodestar calculation to $25,000.00 is justified here by the complexity of the case and risk involved in pursuing a debatable claim (as evidenced by the conflicting conclusions on the defendants motion to dismiss) and by the degree of success achieved (which the parties represent exceeds the recovery possible at trial).  In addition, the plaintiff makes no separate claim for his costs.  Consequently, I find that an award of attorneys fees and costs of $25,000.00 is reasonable.

I respectfully RECOMMEND:

(1)     The Motion [Doc. # 34] be GRANTED; and

(2)     The proposed Settlement Agreement and General Release [Doc. # 34-1] be APPROVED and entered as a stipulated judgment.[3]

---

[3] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated March 26, 2014.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge